IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TONI HERTZOG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | C.A. No. |
| v. ) | |
| ) | |
| THE NEMOURS FOUNDATION, ) | |
| a Florida Corporation, d/b/a NEMOURS ) | |
| CHILDREN'S HEALTH, and NEMOURS ) | |
| CHILDREN'S HOSPITAL, DELAWARE ) | |
| ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

## INTRODUCTION

1. Plaintiff, Toni Hertzog ("Plaintiff"), files this action against Defendant The Nemours Foundation, d/b/a/ Nemours Children's Health and Nemours Children's Hospital, Delaware, ("Defendant" "Nemours") for back pay, front pay, compensatory damages, punitive damages and attorneys' fees for violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* ("Title VII").

## NATURE OF THE ACTION

2. Defendant employed Plaintiff for approximately eighteen years.

3. Defendant engaged in religious discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*

## JURISDICTION

4. This Court has federal question jurisdiction over this cause of action pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district pursuant to 29 U.S.C. § 1331, as well as 28 U.S.C. § 1391(b).

## PARTIES

6. Plaintiff is a resident of Pennsylvania, who at all times relevant to this Complaint was an employee of Defendant Nemours.

7. Defendant is an entity duly organized and operating under the laws of the State of Florida, and owns/operates the Nemours Children's Hospital, Delaware which is located at 1600 Rockland Road, Wilmington, DE 19803. Defendant's registered agent is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

## ADMINISTRATIVE PROCESS

8. On April 18, 2022, Plaintiff filed a timely Charge of Discrimination with the Delaware Department of Labor ("DDOL") and Equal Employment Opportunity Commission ("EEOC").

9. On March 15, 2023, Plaintiff received a "Dismissal and Notice of Rights" from the DDOL, hereto attached as *Exhibit A*.

10. On March 31, 2023, Plaintiff received a "Dismissal and Notice of Rights" from the EEOC, hereto attached as *Exhibit B*.

11. Plaintiff has satisfied all statutory prerequisites for filing this action.

## FACTS

12. Plaintiff began her employment with Defendant Nemours in August of 2003.

13. Plaintiff was employed by Defendant in the position of Registered Nurse.

14. At all material times herein, Defendant had over 500 employees.

15. During the height of the COVID-19 Pandemic, Plaintiff continued to work and treat patients along with many other frontline workers.

16. On or around August 6, 2021, Defendant announced a Mandatory COVID-19 Vaccination policy ("Policy"), requiring all non-exempt employees to submit to the COVID-19 vaccination or face termination.

17. Defendant provided a religious accommodation request form which asked individuals to "Describe the religious belief or practice that necessitates this request for accommodation:"

18. On August 31, 2021, Plaintiff submitted a religious accommodation request to be exempt from Defendant's Policy, detailing her faith and adherence to the teachings of her faith. She is devout practicing Roman Catholic.

19. In the request, Plaintiff cited to bible verses, the ten commandments and to the National Catholic Bioethics Center ("NCBC") 2021. In addition, Plaintiff provided the website of the NCBC.

20. Plaintiff included a letter from her priest supporting her request and establishing that she was a devout parishioner with sincere religious beliefs as to the vaccines.

21. Further, the priest indicated that Plaintiff's beliefs and acting on one's conscience were supported by the Church's teachings.

22. On September 10, 2021, Plaintiff was notified that her religious accommodation request was not on Defendant's tracking system and therefore was untimely.

23. Plaintiff submitted proof of her timely request for a religious accommodation.

24. Defendant advised her religious accommodation request would be reviewed as timely.

25. Less than three hours after this notice, Plaintiff was informed her religious accommodation request had been denied.

26. Defendant failed to discuss any possible reasonable accommodations with Plaintiff.

27. Defendant failed to engage in any interactive process with Plaintiff regarding her request for an accommodation.

28. Defendant could and did reasonably accommodate other employees.

29. Plaintiff's request for accommodations would not have created an undue hardship on Defendant.

30. On October 6, 2021, Plaintiff was terminated as a result of her religious beliefs.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendant:

## COUNT I
### Discrimination Based on Religion in Violation of Title VII of the Civil Rights Act 1964
(42 U.S.C. §§ 2000e *et seq*. as Amended)

31. The allegations of Paragraphs 1 through 30 are incorporated by reference as if fully restated herein.

32. Defendant employs fifteen or more employees and is an "Employer" as defined by 42 U.S.C. § 2000e(b).

33. At all times relevant hereto, Plaintiff was employed by Defendant and was an "Employee" as defined by 42 U.S.C. § 2000e(f).

34. Plaintiff received her Right to Sue letter from the DDOL on March 15, 2023. Exhibit A. Plaintiff received her Right to Sue letter from the EEOC on March 31, 2023. Exhibit B. Plaintiff has satisfied all statutory prerequisites for filing this action.

35. Title VII prohibits employers from "…discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;" 42 U.S.C. § 2000e2(a)(1).

36. In responsive papers to the DDOL, Defendant responded that Plaintiff's objection to the vaccine was personal as opposed to religious and this conclusion is an apparent challenge/denial of Plaintiff's religious beliefs and her sincerity of same.

37. Defendant dismissed Plaintiff's sincere religious based objections concerning the use of fetal stem cells during the development of the vaccines.

38. Defendant claims Plaintiff's objections were personal, despite the support for her beliefs found on the NCBC, scripture passages and her parish priest's letter.

39. Defendant in its response to the DDOL, stated it determined "that religious objections to abortion did not constitute a valid basis for a religious exemption."

40. Title VII requires employers to make "reasonable accommodations for their employees' religious beliefs and practices, unless doing so would result in 'undue hardship' to the employer." *Id.*, 42 U.S.C. § 2000e(j).

41. Plaintiff has sincerely held religious beliefs, based in Catholicism.

42. Plaintiff practices her faith through prayer and attending church services.

43. In accordance with Plaintiff's religious beliefs, she was taught that people are made pure in God's image and likeness as the temple of God.

44. In accordance with her beliefs, Plaintiff has a God-given responsibility to protect the physical integrity of the body.

45. 1 Corinthians 3:16-17 (*KJV*): "Know ye not that the temple of God, and that the Spirit of God dwelleth in you? If any man defile the temple of God, him shall God destroy; for the temple of God is holy, which temple ye are."

46. 1 Corinthians 6:19 (*KJV*): What? know ye not that your body is the temple of the Holy host which is in you, which ye have of God, and ye are not your own?

47. Thus, Plaintiff's sincerely held religious beliefs conflict with Defendant's Policy.

48. Plaintiff informed Defendant of her sincerely held religious belief when she requested a reasonable accommodation from Defendant's COVID-19 vaccine mandate.

49. In fact, consistent with Plaintiff's conscience, she declined to be vaccinated, "A human being must always obey the certain judgment of his conscience. If he were deliberately to act against it, he would condemn himself." (Vatican City: Libreria Editrice Vaticana, 1993), www.vatican.va, n. 1790.

50. Further, A person's informed judgments about the proportionality of medical interventions are to be respected unless they contradict authoritative Catholic moral teachings. United States Conference of Catholic Bishops (USCCB), Ethical and Religious Directives for Catholic Health Care Services, 6th ed. (Washington, DC: USCCB Publishing, 2018), n. 28.

51. There is a general moral duty to refuse the use of medical products, including certain vaccines, that are produced using human cells lines derived from direct abortions. It is permissible to use such vaccines only under certain case-specific conditions, based on a judgment of conscience. Pontifical Academy for Life, "Moral Reflections on Vaccines Prepared from Cells Derived from Aborted Human Fetuses," June 9, 2005; Congregation for the Doctrine of the Faith, Instruction Dignitas personae, 2008, nn. 34-35.

52. The Congregation for the Doctrine of Faith noted that a key consideration beyond the immorality of abortion itself, namely that the bodies of human embryos and fetuses must be treated with respect after death and not exploited as mere biological material. Additionally, the scientists must remove themselves from areas of research and development using abortion-derived cell lines even if they were themselves not involved in any abortions or in obtaining human tissue. Dignitas personae (2008).

53. Pope St. John Paul II noted in *Evangelium vitae*, "Enlightened by this Gospel of life, we feel a need to proclaim it and to bear witness to it in all its marvelous newness…[This includes] the affirmation of the inseparable connection between the person, his life, and his bodiliness… [and] the presentation of human life as a life of relationship, a gift of God, the fruit and sign of his love."

54. Regarding the ethically significant issue of using the bodies of humans killed in elective abortions to promote biotech research and development, Christians must "go to the very roots of life and love" to renew our witness to the sanctity of human life and our determination to end the use of abortion-derived cell lines." John Paul II, *Evangelium vitae*, n. 87.

55. Despite Plaintiff's beliefs, which were consistent with the teaching of her faith, the exemption was summarily denied within three hours.

56. As a result of her sincerely held religious beliefs, Plaintiff was terminated on October 6, 2021.

57. In violation of Title VII, Defendant failed to engage in a meaningful interactive process and failed to provide a reasonable accommodation, despite having the ability to accommodate Plaintiff without an undue burden.

58. Based upon information and belief, Defendant's treatment of medical exemptions was "less stringent" and judgmental, thus treated more favorably, than the review of religious exemption requests.

59. "…religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection. *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021).

60. Defendant's policy burdens Plaintiff's exercise of her religion.

61. Plaintiff's exemption request should have been permitted even if a different religious belief dictated a different religious practice.

62. Permitting an unvaccinated person on campus for medical reasons poses the same risk as allowing an unvaccinated person for religious reasons and violates Title VII.

63. Defendant would not have been "unduly burdened" in accommodating Plaintiff's requests as other individuals in the same position have been afforded exemptions from the COVID-19 policy as a reasonable accommodation for their religious beliefs.

64. The denial of Plaintiff's exemption request grounds stated to the DDOL was pretextual and not made at the time the denial was issued.

65. If Defendant had looked at the website supplied by Plaintiff for the NCBC, it would have found the writings concerning use of fetal cells during the development and the Church teachings.

66. Instead, Defendant punished Plaintiff for her "disfavored" religious beliefs.

67. Plaintiff's religious objection to use the aborted fetal cells during the development of the COVID-19 vaccines has a long history within the tenets of Roman Catholicism.

68. Plaintiff was fired for her sincere religious beliefs although same were discounted by Defendant.

69. Plaintiff is aware of at least three other patient treating nurses who were exempted from Defendant's vaccine mandate.

70. Those that provided a religious exemption also raised the fetal cell use as part of an objection to the vaccine.

71. Defendant has subjected Plaintiff to discrimination and failed to accommodate her on the basis of her religious beliefs in violation of Title VII by denying Plaintiff a reasonable accommodation and ultimately terminating her for her sincerely held religious beliefs.

72. Plaintiff, as a nurse of many years and one who worked during the height of the pandemic, was qualified for her position.

73. Defendant's decision that Plaintiff's beliefs were based on inaccurate facts, her personal beliefs, is evidence of discriminatory intent. The Exemption Committee determined that religious objections to abortion did not constitute a valid basis for a religious exemption.

74. Plaintiff's objection and religious beliefs were fully documented, and Defendant challenged Plaintiff's sincerity and truthfulness improperly.

75. The actions of Defendant were deliberately, intentionally, willfully, purposefully, and knowingly done in violation of federally protected rights.

76. Defendant either knew or showed a negligent or reckless disregard for the matter of whether its conduct violated federal rights.

77. Defendant's actions were outrageous and taken with evil or improper motive, in bad faith, out of personal animus, or motivated by bias and without supporting reasonable grounds.

78. Defendant's actions were wanton and malicious or taken with reckless indifference to rights protected under federal law.

79. Plaintiff's religion made a difference in all actions adverse to her.

80. Plaintiff's religion, and/or protected activity was a motivating or determinative factor in all actions adverse to her.

81. This is direct evidence that religion played a role in Plaintiff's discharge as well as a challenge to Plaintiff's sincerity and claim that the beliefs are religious resulting in her termination, in violation of Tile VII.

82. Plaintiff has suffered damages as a result of Defendant's unlawful discriminatory actions, including past and future lost wages and benefits, compensatory damages, and the cost of bringing this action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

A. Declare the conduct by Defendant to be in violation of Plaintiff's statutory rights and common law rights.

B. Awarding Plaintiff any and all compensation due as a result of the violations herein including, but not limited to lost wages, salary, employment benefits, back pay, front pay and any or all pecuniary damages.

C. Awarding Plaintiff punitive damages.

D. Awarding Plaintiff compensatory damages.

E. Awarding Plaintiff an equal and additional amount as liquidated damages.

F. Awarding Plaintiff costs and reasonable attorney's fees.

G. Awarding Plaintiff pre and post judgement interest at the legal rate.

H. Any and all such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted,

**ALLEN & ASSOCIATES**
*/s/ Michele D. Allen*
Michele D. Allen (#4359)
Delia A. Clark (#3337)
4250 Lancaster Pike Suite 230
Wilmington, DE 19805
302-234-8600
302-397-3930 (fax)
michele@allenlaborlaw.com
delia@allenlaborlaw.com
*Attorneys for Plaintiff*

Dated: June 1, 2023